UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____

HEBEI TIANKAI WOOD & LAND
CONSTRUCTION CO., LTD.,

                      Plaintiff,

           -against-

FRANK CHEN &
KIRIN TRANSPORTATION, INC.,

                      Defendants.
_____

**MEMORANDUM & ORDER**

18-CV-2795

**JACK B. WEINSTEIN, Senior United States District Judge:**

| Parties | Appearances |
|---|---|
| For Plaintiff | Jacob Yiping Chen<br>Dai & Associates PC<br>1500 Broadway, 22nd Floor<br>New York, NY 10036<br>212-730-8880 |
| For Defendant Frank Chen | Carolyn Shields<br>Liu & Shields LLP<br>41-60 Main Street, Suite 208a<br>Flushing, NY 11355<br>718-463-1868 |

**Table of Contents**

I. Introduction ................................................................................................................. 1
II. Facts ........................................................................................................................... 2
   A. Transaction ............................................................................................................ 2
   B. Dispute .................................................................................................................. 3
   C. Motion to Realign and Dismiss ............................................................................. 5
III. Law ............................................................................................................................ 6
   A. Summary Judgment Standard of Review .............................................................. 6
   B. Diversity Jurisdiction ............................................................................................ 6
   C. Antagonism Doctrine ............................................................................................ 7
IV. Application of Law to Facts ...................................................................................... 8
   A. Plaintiff's Showing of Antagonism ....................................................................... 8
   B. Importance of Alienage Jurisdiction ..................................................................... 9
V. Conclusion ................................................................................................................ 12

## I. Introduction

This litigation arises from a transnational business transaction gone wrong. In 2017, Hebei Tiankai Wood & Land Construction Co. Ltd. ("Plaintiff") and Kirin Transportation, Inc. ("Kirin") agreed that Plaintiff would become majority shareholder of Kirin. At the time of the transaction, Frank Chen ("Chen") was the sole owner of Kirin. Plaintiff alleges that Chen made false representations to induce Plaintiff to invest $300,000 in Kirin and then misused the money.

Chen moved to dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. The court ordered the motion converted to one for summary judgement.

Plaintiff is a citizen of China, while Chen and Kirin, the nominal defendant, are citizens of New York. Chen argues that Plaintiff's fraudulent inducement and breach of fiduciary duty claims are derivative, properly belonging to Kirin, so Kirin should be aligned as a plaintiff. Realignment of Kirin as plaintiff would destroy diversity, requiring the case to be dismissed.

Plaintiff argues that the "doctrine of antagonism"—applicable between Kirin and Plaintiff—applies, so that realignment is not required.

Chen disagrees. He contends that Plaintiff is Kirin's majority shareholder so that there is no antagonism between these two.

Chen's argument is not persuasive. *First*, even if Plaintiff has *de jure* control of Kirin, Chen has *de facto* control. Chen is alleged to have forcefully rebuffed Plaintiff's attempts to take control of Kirin, even though Plaintiff is now majority shareholder of Kirin. The caselaw is clear that a court should ensure that the parties are aligned so that there is a real collision of interests.

The real collision of interests is between Plaintiff on one side and Chen and Kirin on the other. *Second*, at its core, this is a dispute between nationals of the United States and of China, making it desirable to try the case in federal court if subject matter jurisdiction exists.

Kirin should remain as a named defendant. This court has jurisdiction over Plaintiff's claims. Chen's motion is denied.

## II. Facts

### A. Transaction

Plaintiff is a construction company based in China. Compl. ¶ 4, ECF No. 1, May 10, 2018; Enterprise Business License, ECF No. 9-3, May 29, 2018. Chinese nationals Qiuxiang Shi ("Shi") and Yingjie Li ("Li") are the sole owners, officers, and managers of Plaintiff. Compl. ¶¶ 8, 17. In November 2017, Shi and Li traveled to New York and were introduced to Chen, then the sole shareholder of Kirin. *Id.* ¶¶ 9–11; Answer ¶¶ 9–11, ECF No. 9, May 29, 2018. Chen is a resident of the State of New York; Kirin is a New York corporation. Compl. ¶¶ 5–6; Answer ¶¶ 5–6. Kirin is alleged to be only a nominal defendant. Compl. ¶ 6.

Chen invited Shi and Li to Kirin's headquarters in Queens, New York. *Id.* ¶ 12; Answer ¶ 12. He wanted the duo to invest in Kirin. *Id.* Plaintiff alleges that Chen represented that Kirin

was a successful company looking to expand its business; he gave Shi and Li documents to "highlight the financial strength" of the company. Compl. ¶¶ 13–14. It is undisputed that Chen stated that if Shi and Li invested in Kirin, Kirin would sponsor Shi for an L-1 visa. *Id.* ¶ 18; Answer ¶ 18. Plaintiff alleges that the visa would have allowed Shi to travel to the United States to participate in the management of Kirin and monitor operations of the company. Compl. ¶ 18. Chen organized meetings with law firms specializing in immigration law to demonstrate his intent to help obtain the visa if Plaintiff invested in Kirin. *Id.* ¶ 19; Answer ¶ 19.

The parties agree that Chen offered Shi and Li 51% of the shares of Kirin for $300,000 in capital investment. Compl. ¶ 20; Answer ¶ 20. Plaintiff alleges that Chen also promised to pay Shi a substantial salary as a manager. Compl. ¶ 20. On November 28, 2017, Chen gave Shi and Li a contract memorializing the agreement; in exchange for $300,000, Kirin agreed to tender 51% of Kirin's shares to Plaintiff and to file an L-1 visa petition for Shi. *Id.* ¶¶ 20, 22; Share Transfer Agreement ¶¶ 1–2, ECF No. 9-5, May 29, 2018. Chen signed an engagement letter with a lawyer to work with Kirin to obtain the visa. Compl. ¶ 26; Answer ¶ 26. On the same day, Plaintiff tendered a certified check to Kirin for $300,000. Compl. ¶ 28; Answer ¶ 28. A stock certificate in turn issued to Plaintiff was for 102 shares, a majority of those in the company. *See* Stock Certificate, ECF No. 18-4, Aug. 5, 2018.

### B. Dispute

What had seemed like a straightforward transaction then began to unravel. In January 2018, per Plaintiff's allegations, Chen contacted Shi and Li asking for additional funds to be invested in Kirin so that Kirin could help obtain a visa for Shi. Compl. ¶ 30. Allegedly, Chen represented that the funds already invested "had been used up." *Id.* ¶ 31. Plaintiff became suspicious and asked Kirin for documents and records, which Chen refused to produce. *Id.* ¶ 32.

The parties agree that in April 2018, Plaintiff discovered that it was not listed as a shareholder on Kirin's 2017 tax returns. *Id.* ¶ 35; Answer ¶ 35.

Plaintiff attempted to establish control of Kirin. Plaintiff alleges that it sent a representative to take over Kirin, but its employees (pursuant to Chen's instructions), refused the representative access to the premises and inspection of books and records. Compl. ¶ 33. Alleged is that Kirin's bank refused to make account records available, and that Chen had never told Kirin's employees of Plaintiff's investment, never informed the landlord of the property where Kirin operated of Plaintiff's investment, and never made Plaintiff an authorized signatory on any of Kirin's bank accounts. *Id.* ¶¶ 33–34.

Chen denies these allegations. Answer ¶¶ 33–34. But, based on the record, they appear to be true. *See* Hr'g Tr. 4:15–19, 5:1–3, Dec. 19, 2018 (parties agree no evidentiary was required).

In April 2018, Shi, as chair and director of Kirin, removed Chen from all positions at Kirin and named Shi chief executive officer of Kirin. Board of Directors Resolution, ECF No. 18-5, Aug. 5, 2018. Shi also named an interim chief executive officer of Kirin, effective immediately. Ltr from Q. Shi to W. Wang, ECF No. 18-6, Aug. 5, 2018.

Chen took steps to counter these moves. On April 17, 2018, his attorney Xiangan Gong ("Gong") wrote to Plaintiff's counsel opposing the "attempted take-over of the business." Email from X. Gong to J. Chen, ECF No. 23-2, Aug. 15, 2018 ("April 17, 2018 Email from X. Gong to J. Chen"). Gong wrote:

> The stock transfer agreement between the parties entered last November was never finalized: (1) *Frank Chen was and still is the one who actually supervises and manages the company's daily business operation*, Qiuxiang Shi had never participated into company's management or business operation; (2) the lease was

> signed by Frank Chen; (3) Frank Chen was the only authorized personnel for the company's bank account.

*Id.* (emphasis added). In the same email, Gong wrote, "[Chen] CANNOT LEAVE THE COMPANY AND LET YOUR CLIENT OPERATE THE BUSINESS WITH HIS LEASE, SUBJECT HIM TO VIOLATION OF THE LEASE." *Id.* (capitalization in original).

On May 1, 2018, Gong repeated Chen's position that he properly maintained control of Kirin. Email from X. Gong to G. Hom, ECF No. 23-3, Aug. 15, 2018 ("May 1, 2018 Email from X. Gong to G. Hom"). Gong wrote,

> [Chen] prefers to do a clean-cut closing then your client takes full control of the corporation and its business operation. . . . [Chen] cannot gives [sic] up the management right when the lease agreement and most importantly the company's TLC license was under his name.

*Id.*

### C. Motion to Realign and Dismiss

In May, Plaintiff brought three causes of action against Chen and Kirin: (1) fraudulent inducement; (2) breach of contract; and (3) breach of fiduciary duty. Compl. at 6–9. Alleged is that a demand for Kirin to institute suit against Chen would be futile. *Id.* ¶ 7. Chen and Kirin filed a joint answer in response to Plaintiff's complaint. Answer at 1. By August, Chen had hired new counsel for himself, but he declined to hire new counsel for Kirin. Minute Entry, ECF No. 25, Aug. 15, 2018.

Chen's new attorney filed a motion to dismiss for lack of subject matter jurisdiction, arguing that Kirin should be realigned as a plaintiff, thus destroying the complete diversity of citizenship required for this court to have subject matter jurisdiction. *See* Def. Chen's Notice of Mot. & Mot. to Dismiss Under Rule 12(b)(1) for Lack of Subject Matter Jurisdiction at 4, ECF No. 18, Aug. 5, 2018.

This court converted Chen's motion to dismiss to a motion for summary judgment. Order, ECF No. 26, Aug. 27, 2018. A hearing on the motion was held on December 19, 2018. *See* Hr'g Tr., Dec. 19, 2018. The parties agreed that the motion could be decided without an evidentiary hearing. *Id.* 4:15–19, 5:1–3.

**III. Law**

   **A. Summary Judgment Standard of Review**

At the summary judgment stage, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The movant must show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists for summary judgment purposes when, "the evidence, viewed in the light most favorable to the nonmoving party, is such that a reasonable jury could decide in that party's favor." *Chaohui Tang v. Wing Keung Enterprises, Inc.*, 210 F. Supp. 3d 376, 388 (E.D.N.Y. 2016) (quotation marks and citation omitted).

   **B. Diversity Jurisdiction**

District courts have original jurisdiction of civil actions between a citizen of one state and a citizen of a foreign state when the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a). Alienage jurisdiction is a subset of diversity jurisdiction.

"[D]iversity jurisdiction is available only when all adverse parties to a litigation are completely diverse in their citizenships." *Herrick Co. v. SCS Communications, Inc.*, 251 F. 3d 315, 321 (2d Cir. 2001). Federal diversity jurisdiction cannot be conferred by the parties' own determination of who should be plaintiffs and who should be defendants. Rather, "the federal courts are required to realign parties according to their real interests so as to produce an actual

collision of interests." *Lewis v. Odell*, 503 F.2d 445, 447 (2d Cir. 1974); *see also City of Indianapolis v. Chase Nat. Bank of City of New York*, 314 U.S. 63, 69 (1941) (it is the court's duty to "look beyond the pleadings, and arrange the parties according to their sides in the dispute" (citation omitted)).

### C. Antagonism Doctrine

Generally, a shareholder has no individual cause of action for a wrong against a corporation. *Abrams v. Donati*, 489 N.E.2d 751, 751 (N.Y. 1985). This results in the corporation being aligned as the plaintiff in litigation brought to remedy harm to a corporation because the corporation is the real party in interest. *See Liddy v. Urbanek*, 707 F.2d 1222, 1224 (11th Cir. 1983).

When, however, "management is aligned against the stockholder and defends a course of conduct which [the stockholder] attacks," there is "antagonism" and the corporation should be aligned as a defendant. *Smith v. Sperling*, 354 U.S. 91, 95 (1957). Fraud, breach of trust, and illegality on behalf of the management in control are strong indicators of antagonism. *Id.* (collecting cases); *ZB Holdings, Inc. v. White*, 144 F.R.D. 42, 46 (S.D.N.Y. 1992) ("[I]f the complaint in a derivative action alleges that the controlling shareholders or dominant officials of the corporation are guilty of fraud or malfeasance, then antagonism exists, and the corporation should be aligned as a defendant."). Antagonism may also exist where management is hostile to the interests of shareholders. *Smith*, 354 U.S. at 97; *Rogers v. Valentine*, 426 F.2d 1361, 1363 (2d Cir. 1970) (upholding the district court's decision that a corporation should be aligned as a defendant when management had refused to institute suit on behalf of the corporation and demand would be futile).

Courts should normally determine the issue of antagonism without delving into the merits of the claims. *See Smith*, 354 U.S. at 95 ("the instant case is a good illustration" of why not "to

7

delve into the merits" "for it has been over eight years in the courts on this question of jurisdiction").

IV. **Application of Law to Facts**

   A. **Plaintiff's Showing of Antagonism**

It is assumed for purposes of this opinion that Plaintiff's claims are derivative and intended to remedy wrongs to the corporation. Nevertheless, Kirin remains properly aligned as a defendant because of antagonism.

*First*, though Plaintiff has *de jure* control of Kirin, Chen has *de facto* control. It is undisputed that Chen is managing Kirin and Plaintiff's attempts to obtain control have failed. Those attempts are alleged to have been forcefully rebuffed by Chen. At his direction, Kirin's employees denied Plaintiff access to Kirin's operating premises and books and records. Chen also denied Plaintiff access to Kirin's bank by failing to make Plaintiff a signatory on Kirin's bank account.

Chen has explicitly refused to cede control of Kirin to Plaintiff. In April 2018, Shi, chair and sole director of the corporation, "removed" Chen from all positions in Kirin and appointed a new chief executive officer of Kirin. But Chen refused to cede management of Kirin to Shi's appointee. *See* April 17, 2018 Email from X. Gong to J. Chen ("Mr. Chen DOES oppose the attempted take-over of the business." (emphasis in original)); *id.* ("Frank Chen was and still is the one who actually supervises and manages the company's daily business operation"); May 1, 2018 Email from X. Gong to G. Hom ("[Chen] cannot gives [sic] up the management right").

In view of Chen's actual management of Kirin and Plaintiff's alleged inability to wrest control from him despite being majority shareholder, it is highly unlikely that Chen would institute either of Plaintiff's derivative claims against Kirin. Based on the facts alleged in the complaint, such a demand would be futile. In these circumstances, antagonism exists.

8

*See Rogers*, 426 F.2d at 1363 (upholding the district court's decision that a corporation should be aligned as a defendant when management had refused to institute suit on behalf of the corporation and demand would be futile).

*Second*, Plaintiff alleges that Chen has engaged in fraud by wasting the investment in Kirin by Plaintiff and by engaging in other acts of malfeasance, including failing to list Plaintiff as a shareholder on Kirin's 2017 tax returns. When the dominant official of the corporation is accused of fraud, the corporation is appropriately aligned as a defendant. *See ZB Holdings*, 144 F.R.D. at 46 (concluding that "the requisite antagonism" existed because plaintiff alleged that the corporation's directors—the "dominant officials"—had engaged in common law fraud and misrepresentation).

Chen argues that antagonism cannot be found because Plaintiff is the majority shareholder of Kirin. Majority "control" of a corporation, however, is only one "circumstance indicating a lack of antagonism." *Taylor v. Swirnow*, 80 F.R.D. 79, 83 (D. Md. 1978) (concluding that the parties lacked antagonism when plaintiffs owned a majority share in the corporation, among other reasons).

The court's role is to determine where the real collision of interests lies. The pleadings show that collision between Plaintiff on one side and Chen and Kirin on the other.

### B. Importance of Alienage Jurisdiction

This litigation, at its core, is a transnational business dispute between a Chinese corporation and a New York citizen. It is the transnational nature of the action—and the fact that all relevant activity took place in the United States—that make it vital that the parties be able to litigate in a United States court. Reliability of the United States courts is apparent.

Alienage jurisdiction—the jurisdiction of the federal courts over suits between citizens of the United States and citizens of a foreign state—is guaranteed by the Constitution. U.S. Const.

art III, § 2 ("The judicial Power shall extend . . . to Controversies between . . . a State, or the Citizens thereof, and foreign States, Citizens or Subjects."). The primary motivation for establishment of alienage jurisdiction in the Constitution was the difficulty British creditors had collecting from American debtors in state court prior to the Constitutional Convention. *JPMorgan Chase Bank v. Traffic Stream (BVI) Infrastructure Ltd.*, 536 U.S. 88, 94–95 (2002) ("This penchant of the state courts to disrupt international relations and discourage foreign investment led directly to the alienage jurisdiction provided by Article III of the Constitution."); *see also Koehler v. Bank of Bermuda (New York) Ltd.*, 229 F.3d 187, 188 (2d Cir. 2000) ("the fundamental purpose of alienage jurisdiction—to void offense to foreign nations"); Kevin R. Johnson, *Why Alienage Jurisdiction? Historical Foundations and Modern Justifications for Federal Jurisdiction over Disputes Involving Noncitizens*, 21 Yale J. Int'l L. 1, 15 (1996) (describing the origins of the alienage clause of the Constitution); Wythe Holt, *The Origins of Alienage Jurisdiction*, 14 Okla. City U. L. Rev. 547, 564 (1989) ("Alienage jurisdiction, as embodied in the Constitution and as put into action in the Judiciary Act of 1789, was . . . an attempted solution to a major political problem of international dimensions."). The Founders concluded that the burgeoning American economy could grow only if foreign companies had the "proper security" provided by the federal government's regularized review of contract disputes. *See JPMorgan Chase Bank*, 536 U.S. at 95–96 (relying on contemporaneous statements of James Wilson, James Madison, and Alexander Hamilton).

The First Congress, in its attempt to further the goals emanating from these motivations, gave the federal courts jurisdiction of cases in which "an alien is a party" to litigation. *See id.* (relying on Judiciary Act of 1789, ch. 20, § 11, 1 Stat. 78). The Supreme Court, however, concluded that this jurisdictional grant did not include suits solely between two aliens because it

exceeded the constitutional jurisdictional grant. *Mossman v. Higginson*, 4 U.S. 12, 14, (1800). "[T]he legislative power of conferring jurisdiction on the federal Courts is, in this respect, confined to suits between citizens and foreigners." *Id.* (emphasis omitted).

Congress has since excepted from federal jurisdiction categories of cases involving alien litigants. Though the Constitution requires only "minimal diversity" among parties, *State Farm Fire & Casualty Co. v. Tashire*, 386 U.S. 523, 530–31 (1967), Congress has required complete diversity to support federal jurisdiction, *Herrick*, 251 F. 3d at 322. Complete diversity requires that aliens be on both sides of the litigation along with fully diverse domestic opposing parties. *Bayerische Landesbank, New York Branch v. Aladdin Capital Mgmt. LLC*, 692 F.3d 42, 49 (2d Cir. 2012) ("[W]e do not have diversity jurisdiction over cases between aliens. More specifically, 'diversity is lacking . . . where the only parties are foreign entities, or where on one side there are citizens and aliens and on the opposite side there are only aliens.'" (citation omitted)). In other circuits, courts adhere to a more traditional view denying diversity jurisdiction when there are aliens on both sides of a controversy, regardless of the presence of opposing domestic parties. *See* Actions Involving Aliens—General Principles, 14A Fed. Prac. & Proc. Juris. § 3661 (4th ed.) (collecting cases).

The design of federal practice to protect both aliens and American citizens remains today. Transnational commercial interactions have become more commonplace and more complex. Litigating in state court could be burdensome, since foreign parties might be subject to the civil procedures of more than one jurisdiction. By contrast, litigating in a foreign court might subject United States parties to a system of civil procedure not yet fully developed, and in which it might not be possible to obtain personal jurisdiction over all necessary parties. It could be argued that

11

it would be most prudent for the federal courts to have diversity jurisdiction of all cases in which an alien is a party so long as a citizen of the United States is also a party.

The court has considered the pleadings and the record and finds an antagonistic relationship requiring Kirin to remain a nominal defendant. Since Kirin is properly aligned as a defendant, there is complete diversity among the parties.

V. **Conclusion**

Defendant's motion to dismiss is denied. Kirin is properly aligned as a nominal defendant here. Since Plaintiff is a citizen of China and defendants are citizens of New York, there is complete diversity among the parties. The court has subject matter jurisdiction of Plaintiff's claims.

The parties are ordered to expedite discovery.

SO ORDERED.

/s/ Jack B. Weinstein
Jack B. Weinstein
Senior United States District Judge

Dated: December 21, 2018
      Brooklyn, New York